## Montoursville Borough v. Eck.

*Municipal liens — Paving — Boroughs — Farm land — State highway in borough.*

1. On the trial of a *scire facias sur* municipal lien for paving a portion of the width of a state highway in a borough, the defendant's claim that the property, although in the borough, was farm land, and, therefore, not assessable, will not be sustained where the evidence shows that defendant had offered to sell the land as town lots, and that the land was worth far more for building lots than for farming.

2. In such case, it is proper to reject evidence as to the character of the land lying directly opposite defendant's land on the other side of the street.

*Sci. fa. sur* municipal lien. Application for new trial and motion in arrest of judgment. C. P. Lycoming Co., March T., 1922, No. 285.

*Max L. Mitchell, W. W. Champion* and *W. A. Evert,* for plaintiff.

*Frank P. Cummings* and *George B. M. Metzgar,* for defendant.

POTTER, P. J., 17th judicial district, specially presiding, Jan. 4, 1926.—Montoursville lies in Lycoming County a few miles east of Williamsport, and consists mainly of one long street, designated as Broad Street, running in an easterly and westerly direction. This town is incorporated as a borough, and the state highway, known as the Susquehanna Trail, which is a heavily-traveled public highway, passes through the entire length of this borough on Broad Street. The Susquehanna Trail is the main artery of travel north from Washington, Baltimore, Harrisburg and intervening points to Williamsport and points north.

Prior to the year of 1918, that part of the Susquehanna Trail passing through Montoursville had been a dirt road, but in that year the Borough of Montoursville, wishing to take advantage of the state and county aid afforded them by the various acts of assembly applicable, took the proper legal steps to macadamize Broad Street in order to present better facilities for the heavy travel over this thoroughfare. It was, therefore, arranged for the macadamization of Broad Street throughout its length through Montoursville. This was done to a width of sixteen feet, the State paying for eight feet, the county paying for four feet and the borough paying for the other four feet. However, it was found necessary, through the said borough or at least a part of it, to extend the width of the macadamization to a width of more than the sixteen feet, and the abutting land owners were called upon to pay for this work, [for] what was more than the sixteen feet in width. And, among others, this defendant was called on to pay his ratable portion, or 1610 feet, along which his property abuts, reckoned by the foot-front rule. We might add, for the information of any one interested, that this road was built part of brick and part of cement, with the proper curbing.

The defendant's property abuts this improved road on the south for a distance of 1610 feet, the amount he being called upon to pay being $990.37, which, with accumulated interest thereon from that time, now amounts to a total of $1286.04. He refused to pay it, claiming that his property was farm land; therefore, was exempt, and that he was not liable for this claim.

A municipal lien was filed for the amount of the claim, wherefore this suit.

We were informed that this case was tried twice before, one trial resulting in a verdict for the defendant, and the other in a disagreement of the jury. Wherefore, upon motion being duly presented, we thought it best for the jury to view the premises. The jury were taken upon the grounds with the presiding judge and respective counsel, who were permitted to call the attention of the jury to all matters relevant to the issue, including improvements made in the way of new buildings and otherwise since the year 1918.

This defendant owns a farm of from 214 to 217 acres immediately south of Broad Street and abutting upon it, for which he paid $22,500 about the year 1910, 1610 feet of which abut on this street.

The only question for the consideration of the jury, as we view it, is whether or not this is urban land. If it is, then the defendant is liable for the cost of this improvement along his land. If it is not, then he is not liable in these proceedings. And in the decision of this question we thought it best for the jury to see the land in contention with its surroundings. That is why, in the face of two former trials, we favored the application to take the jury upon the grounds. We thought they could get a better idea of the status of this land by viewing it than by all the testimony, and we think they did. Upon the conclusion of the trial they rendered a verdict for the plaintiff for $1286.04. Reasons were filed for a new trial, as well as a motion in arrest of judgment. We have been unable to find among the files these reasons or the motion, but we think we can gather their purport from the brief of the defendant sufficiently to enable us to dispose of them.

The first reason is to the effect that we refused to admit evidence as to the character of land in the Borough of Montoursville lying to the north of the line of houses and lots on the north side of Broad Street opposite the land of the defendant.

The town of Montoursville is quite lengthy, its population being centered chiefly on Broad Street, with, as we have hereinbefore intimated, several parallel streets of minor importance. The property of this defendant is on the south side of this street. To the west of his land, on the south side of this street, it is built up with town properties closely, reaching to his western line, and even to 600 feet beyond it, he having sold off building lots from his farm for this distance east of his west line and to a depth of 194 feet or thereabouts. To the east of his eastern line, also a few houses are standing. To the north of his land, across Broad Street, for the entire length of his 1610 feet, it is built up, very few vacant lots remaining, these lots running north 200 feet, some less and some more. North of these lots is some land used for farming, pasturing and the like, one tract containing eleven acres, if we remember correctly. At the trial we were asked to admit evidence as to the character of this land north of these lots on the north side of Broad Street. We could not see how this proposed evidence could shed any light on the character of the land immediately south of Broad Street, so we excluded it, and we think rightly so. This ruling on our part is now complained of, and the case of McKeesport *v.* Soles, 178 Pa. 363, is cited as tending to support the contention of the defendant. We have read this case and we find it to be

nearly on all-fours like the case at bar. We fail to see how this case can support the contention of the defendant, and in that case a verdict was rendered in favor of the plaintiff, just like the case under contemplation. Other cases are cited by the learned counsel for the defendant which we do not think are in line at all.

In the present case we think the land, concerning which evidence was offered, was too far remote to affect the land in controversy. We thought we were correct in our ruling on this question at the trial, and we think so yet.

Of course, we are confining our observations to the years of 1918 and 1919, as to the character of this land at that time, and we told the jury so in our charge. As early as the year 1912 this defendant was offering the lots on his land along Broad Street for sale. He had notices to that effect posted at different places along his line. He had engaged the services of a Mr. English to effect sales of them for him. He had made a map or plot of them and had marked on that plot an alley in the rear of them eighteen feet wide. He had sold off 600 feet of them at the rate of from $1000 to $1250 per acre, which sales were made by Mr. English, when he suddenly dismissed him from his service and sold no more lots. It is testified by witnesses that these lots along the south side of Broad Street, within the 1610 feet of defendant's land, are worth far more as building lots than for farming. Defendant says he farmed them and trucked this land, but witnesses say the land produced only one fair crop in many years, and that for farming purposes it is worth $100 per acre, while for building purposes it is worth $350 to $400 to $500 per lot. Which will this defendant take or retain, the $100 per acre as a farm, or the $350 to $400 to $500 per lot for building purposes? To ask this question is to answer it, as our knowledge of men goes.

Then, again, it would be very profitable for this defendant to be declared exempt from this municipal claim and then throw open these lots for sale with the improved street abutting them, for which some one else had paid, thus enhancing their value to a considerable degree, and if he can get $350 to $400 to $500 per lot for them as building lots, instead of $100 per acre as farm land, to be by him retained in his farm, this would be the natural thing for him to do.

We are led to the firm conclusion that this defendant's 1610 feet abutting on the south side of Broad Street is urban property, and we think the jury were correct in their so finding. The presiding judge at the trial was on the ground and saw it all, so did the jury, and in view of all the surrounding conditions as they were in 1918 and 1919 when this improved road was built, we think the jury made no mistake in the rendition of their verdict. Had the question been submitted to us for decision after viewing the premises, we would have decided it in the same manner.

And now we have the same question brought up concerning our charge to the jury, and by the same counsel, as was raised against us in another case we heard at the same term of court, that we "called special attention to testimony favorable to the plaintiff, but did not give adequate mention to matters favorable to the defendant."

This is becoming almost a stereotyped form of accusation against the probity of this particular trial judge. We have presided in many of the courts in this state, but in these two lawsuits, defended by the same counsel, is the first time we had any accusation made against us relative to the fairness or unfairness of our charge to the jury. It nearly seems as though, when there is nothing else to complain about, the trial judge must in a nice genteel manner bear it.

Montoursville Borough *v.* Eck.

We have gone over our charge to the jury very carefully with a view of trying to see if this charge was true or not, and we must say we cannot find anything in it to substantiate it.  Trying to look at this charge as delivered by some one else, we cannot see how it could be more fair.  We told them repeatedly that the question for them to decide, under all the evidence, was whether this was rural or urban property.  We fail to see how English language could formulate a fairer charge than we gave them.  Since the trial is over and there is no jury to read this opinion or hear it read, we had our own opinion regarding the ultimate outcome of this case as to what the verdict should be, but we studiously tried not to let the jury see or know how we felt about it, and we think we did not.

We think the case referred to in our charge to the jury, a part of which we read to them, controls this case, and we fail to see how we can say anything more to make plain our legal views on the questions herein involved.

And now, to wit, Jan. 4, 1926, the reasons for a new trial are dismissed and the motion in arrest of judgment is refused, and it is ordered that judgment be entered on the verdict rendered upon compliance with the legal requirements and the rules of practice of Lycoming County.

And now, to wit, Jan. 4, 1926, an exception is noted for the defendant and a bill is sealed.

From Charles P. Ulrich, Selinsgrove, Pa.